United States District Court
Southern District of Texas
**ENTERED**
February 19, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| LABORATORIOS PISA S.A. de C.V.; and CAB ENTERPRISES, INC., <br><br> Plaintiffs, <br><br> VS. <br><br> PEPSICO, INC.; and STOKELY-VAN CAMP INC., <br><br> Defendants. | § § § § § § § § § § § § § CIVIL ACTION NO. 7:21-cv-00062 |

## TEMPORARY RESTRAINING ORDER

The Court now considers Plaintiffs' "Notice of Emergency Motion and Motion" requesting a temporary restraining order and preliminary injunction,[1] and Plaintiffs' later-filed "Memorandum of Law in Support of Plaintiffs' Emergency Motions for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction,"[2] both filed in the evening on February 18, 2021. After considering the motion, record, and relevant authorities, the Court **GRANTS** Plaintiffs' motion.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a trademark infringement case. Plaintiff Laboratorios Pisa S.A. de C.V. is a Mexican company that owns the ELECTOLIT trademarks and Plaintiff CAB Enterprises, Inc. is a Delaware corporation that is the sole licensor in the United States for the ELECTROLIT trademarks.[3] Plaintiffs bring this action to enjoin Defendants' launch of a competitive product in

---

[1] Dkt. No. 2.
[2] Dkt. No. 9.
[3] Dkt. No. 1 at 6, ¶¶ 19–20.

the "rehydration drink market,"[4] which is scheduled to take place on Sunday, February 21, 2021.[5] Plaintiffs first learned of Defendants' intent to launch a new product on Friday, February 12, 2021.[6] Plaintiffs then filed their instant emergency motion for a temporary restraining order on Thursday, February 18th.[7] Plaintiffs first introduced their ELECTROLIT product in Mexico "in 1950 as a solution for dehydration in children"[8] and then introduced their ELECTROLIT product in the United States market in 2014.[9] Plaintiffs allege that Defendants sought market success with Defendants' "powdered drink additive that they called 'Gatorlytes,'" but the product was unsuccessful, so Defendants took notice of ELECTROLIT success in the United States market, began to bully and complain to Plaintiffs about Plaintiffs' advertising, and then "slavishly [copied] so many elements of the ELECTROLIT branded packaging and label [in] a calculated attempt to associate Gatorlyte with the ELECTROLIT brand rather than with the well-known Gatorade brand" and now intend to launch "Gatorlyte" as a competitive rehydration drink product in the same market space.[10] The two products are depicted below:

---

[4] Dkt. No. 9 at 37.
[5] Dkt. No. 2 at 2.
[6] *Id.*
[7] Dkt. No. 2.
[8] Dkt. No. 2-2 at 1, ¶ 3.
[9] Dkt. No. 1 at 3, ¶ 9.
[10] *Id.* at 2–4, ¶¶ 6–13; *id.* at 26, ¶ 82.

 

"To stop this unlawful conduct, and to recover the damages caused by it, Plaintiffs bring this action for injunctive and monetary relief for false designations of origin and trade dress infringement in commerce" under the Lanham Act, 15 U.S.C. §§ 1051–1141n and various other federal and state laws concerning economic competition.[11]

## II. Cautionary Note

As a threshold matter, the Court notes that Plaintiffs' filings often lack numbered paragraphs, hindering the Court's reference to Plaintiffs' arguments. The Court cautions Plaintiffs that future submissions should consistently number each paragraph to properly comply

---

[11] Dkt. No. 1 at 5–6, ¶ 17.

with the Federal Rules of Civil Procedure.[12] The Court now turns to Plaintiffs' motion for a temporary restraining order.

### III. DISCUSSION

#### a. Legal Standard

A temporary restraining order may issue under Federal Rule of Civil Procedure 65(b) only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Furthermore,

> [t]here are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, Plaintiff[s] must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest.[13]

"To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment."[14]

#### b. Analysis

##### 1. Federal Rule of Civil Procedure 65

Plaintiffs do not have a separate Rule 65(b)(1)(B) certification, but Plaintiffs' emergency motion indicates that they have attempted to contact Defendants' counsel[15] and Plaintiffs' memorandum of law alleges that they will suffer irreparable harm in loss of marketshare,

---

[12] FED. R. CIV. P. 7(b)(2) ("The rules governing captions and other matters of form in pleadings apply to motions and other papers."); FED. R. CIV. P. 10(b) (emphasis added) ("A party must state its claims or defenses *in numbered paragraphs*, each limited as far as practicable to a single set of circumstances.").
[13] *Vogt v. Tex. Instruments Inc.*, No. CIVA 3:05CV2244 L, 2006 WL 4660133, at *2 n.4 (N.D. Tex. Aug. 8, 2006) (citing *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) & *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)); *accord Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).
[14] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).
[15] Dkt. No. 2 at 2–3.

consumer goodwill, and customer confusion if the Court does not temporarily enjoin Defendants' Gatorlyte product launch.[16] The Court finds that Plaintiffs have complied with Rule 65(b)(1) and that a temporary restraining order may issue without prior notice to Defendants.

*2. Substantial Likelihood of Success on the Merits*

"A claim for trade dress infringement under [the Lanham Act, 15 U.S.C. § 1125(a)] requires a showing that '(1) the dress qualifies for protection, which requires considering functionality, distinctiveness, and secondary meaning; and (2) that the dress has been infringed, which requires considering the likelihood of confusion.'"[17]

"Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product."[18] A distinctive design "is entitled to protection from unfair competition if the bottle design is sufficiently distinctive to serve as an identifier of source."[19] "The Supreme Court and the Fifth Circuit have recognized that product packaging has a tendency to be inherently distinctive" because the possibilities for product packaging are virtually endless, so the selection of one particular dress can serve as an identifier of its source and be protectible without unduly hindering competitors' ability to choose their own design.[20]

---

[16] Dkt. No. 9 at 55.
[17] *West v. Velo Enter. Co.*, No. SA-13-CV-024-OLG, 2014 U.S. Dist. LEXIS 191209, at *11 (W.D. Tex. June 9, 2014) (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117–18 (5th Cir. 1991)).
[18] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (quotation omitted); *see TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001) ("The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods.").
[19] *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 426 (5th Cir. 1984).
[20] *Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 897 (S.D. Tex. 2011) (Ellison, J.) (citing *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212 (2000) & *Chevron Chem. Co. v. Voluntary Purchasing Grps.*, 659 F.2d 695, 702–03 (5th Cir. 1981).

The Court finds that Plaintiffs have shown a prima facie case of substantial likelihood of success on the merits that its ELECTROLIT product's trade dress qualifies for protection because its "bottle design [and packaging are likely] sufficiently distinctive to serve as an identifier of source."[21] Plaintiffs' selection of a white diagonal label, "Premium Hydration" and "Scientific Formula" badges, and prominent "Electrolit" product name complete with multicolored swooping droplets are sufficiently distinctive, for present purposes, for determining that Plaintiffs have a substantial likelihood of showing that their trade dress qualifies for protection.[22]

The test for likelihood of confusion "comprises a number of factors or digits including the following: similarity of product, similarity of retail outlets and purchasers, similarity of design, strength of the trademark, defendant's intent, actual confusion, and the similarity of advertising media."[23] The Court finds that Plaintiffs have thoroughly demonstrated the products' similarity in that they both share white diagonal labels in the same orientation that cover the midsection of the bottle, they both spell out the full product name in the largest font on the white label, they both share one rectangular badge regarding the products' hydration qualities and one additional circular badge, and they share a markedly similar bottle design with two grooves encircling the bottle and dividing it vertically in approximately one-third proportions.[24] In addition, Plaintiffs included evidence that Defendants are intentionally advertising the products

---

[21] *Sicilia Di R. Biebow & Co.*, 732 F.2d at 426.
[22] *Compare* Dkt. No. 1 at 4, ¶ 13 (discussing the distinctive trade dress), *with Carillon Importers Ltd. v. Frank Pesce Grp.*, 913 F. Supp. 1559, 1564 (S.D. Fla. 1996) ("Combined, these [bottle] components have an elegant, minimalist style that is suggestive of refinement and quality. Such a design is distinctive in the vodka marketplace and protectable as trade dress. Upon such a finding, it is not necessary for the Court to evaluate whether Stolichnaya Cristall has also acquired a secondary meaning.").
[23] *Am. Rice, Inc. v. Ark. Rice Growers Co-op. Ass'n*, 532 F. Supp. 1376, 1384 (S.D. Tex. 1982), *aff'd,* 701 F.2d 408, 412 (5th Cir. 1983) (citation omitted) ("The district judge's decision is well-researched, carefully reasoned, and correctly sets forth the applicable law. We adopt the opinion as our own and affirm the judgment as to each issue considered in the decision.").
[24] Dkt. No. 1 at 20–23, ¶¶ 69–75.

similarly and placing them in the same store shelf space. In a "2021 Innovation" presentation slide from a company bearing Defendant PepsiCo's trademark, the slide explains that "Electrolit's buyer base is drawn to 'rehydration benefits' from high electrolyte content, and Gatorlyte has a scientifically backed formula with higher electrolyte content than Electrolit [l]aunching in flavors that index highly with the Hispanic consumer."[25] Furthermore, Plaintiffs allege and provide evidence that "PepsiCo directed retailers to place Gatorlyte 'next to or in place of ELECTROLIT' with a large red X-out of ELECTROLIT beverages,"[26] which supports an inference that the product and product designs are similar, the advertising media is similar, and they will be sold among the same retailers and Defendants intend to displace Plaintiffs' ELECTROLIT products. The Court finds that Plaintiffs have demonstrated a substantial likelihood of success on the merits sufficient for a temporary restraining order.

### 3. *Substantial Threat of Immediate and Irreparable Harm*

"When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm, regardless of the actual quality of the defendant's goods. The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill."[27] Plaintiffs demonstrate via an affidavit of the commercial director of CAB Enterprises, Inc. that they will lose revenue "as customers are confused into buying Gatorlyte products when they mean to buy Electrolit products" and that their substantial investments in garnering the loyalty of retailers and customers could be quickly wiped out by the

---

[25] Dkt. No. 2-4 at 5.
[26] Dkt. No. 9 at 10–11; *see* Dkt. No. 2-3.
[27] *Joy Mfg. v. CGM Valve & Gauge Co.*, 730 F. Supp. 1387, 1394 (S.D. Tex. 1989) (Hoyt, J.) (citing *Am. Rice, Inc. v. Ark. Rice Growers Co-op. Ass'n*, 532 F. Supp. 1376, 1389 (S.D. Tex. 1982) ("Because plaintiff may not control the quality of defendant's goods, ARI has lost and faces future losses of its own reputation and goodwill. This loss of control, in spite of defendant's claim that its rice quality equals plaintiff's, constitutes immediate, irreparable harm."), *aff'd,* 701 F.2d 408, 412 (5th Cir. 1983) (citation omitted) ("The district judge's decision is well-researched, carefully reasoned, and correctly sets forth the applicable law. We adopt the opinion as our own and affirm the judgment as to each issue considered in the decision.").

confusion resulting from conflation of ELECTROLIT products with Gatorlyte products.[28] The Court finds that the likelihood of confusion, potential irretrievable loss of shelf space and customer and retailer goodwill, and the proximity of Defendants' planned launch constitute a substantial threat of immediate and irreparable harm to Plaintiffs.

>    4. *Greater Injury will Result from Denying the Temporary Restraining Order than from its Being Granted*

"Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'"[29] The Court credits Plaintiffs' argument that "PepsiCo knew of Plaintiffs' prior rights in the ELECTROLIT trade dress . . . and accepted the risk that their product could be found infringing, and enjoined, through litigation."[30] As Plaintiffs' evidence shows, Gatorlyte is intended to be sold "Next To or In Place of Electrolit Where Sold"[31] and Gatorlyte is a similarly designed direct competitor to ELECTROLIT.[32] "If a party is enjoined from using a trademark, it is inevitable that it will suffer some hardships. [But], the Court notes that the harm which [defendants] allege is at least partially self-inflicted."[33] Furthermore, Plaintiffs attest that "[i]f not enjoined, Defendants' conduct will eviscerate the good will [Plaintiffs] have spent seven years carefully cultivating for the Electrolit brand."[34] The Court holds that granting a temporary restraining order to preserve the status quo and prevent customer and retailer confusion pending a hearing on Plaintiffs' motion for a preliminary injunction is warranted because "[n]o later

---

[28] Dkt. No. 2-2 at 11–12, ¶¶ 44–45.
[29] *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (quoting *Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977)), *quoted in Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.12 (5th Cir. 1991).
[30] Dkt. No. 9 at 56.
[31] Dkt. No. 2-3.
[32] *See* Dkt. No. 2-4 at 5.
[33] *Petro Franchise Sys. v. All Am. Props., Inc.*, 607 F. Supp. 2d 781, 797 (W.D. Tex. 2009) (cleaned up).
[34] Dkt. No. 2-2 at 12, ¶ 46.

action by this Court could retrieve consumers' good will towards the ELECTROLIT brand, once it has been lost."[35]

        *5.   Granting a Temporary Restraining Order will not Disserve the Public Interest*

"[T]he public has an interest in preventing confusion about the origin of the products that it buys. The public interest weighs in favor of granting the preliminary injunction."[36] In light of the Court's finding that Plaintiffs have shown a substantial likelihood of success in showing substantial confusion regarding the products at issue, the Court holds that issuance of a temporary restraining order would not disserve the public interest.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** Plaintiffs' emergency motion for a temporary restraining order.[37] The Court **ORDERS** that Defendants and their principals, agents, officers, directors, members, servants, employees, successors, assigns, and all other persons in concert and participation with them, upon actual notice of this Temporary Restraining Order or by service by any means reasonably calculated to give notice, are immediately **TEMPORARILY RESTRAINED** from the following:

1. Manufacturing, distributing, shipping, advertising, marketing, promoting, selling, or otherwise offering for sale Gatorlyte in the trade dress depicted in this Temporary Restraining Order or any products infringing on the ELECTROLIT trade dress as depicted in this Temporary Restraining Order or any ELECTROLIT trademarks as registered under patent registration numbers 4222726 (issued October 9, 2012), 4833885 (issued October 13, 2015), 4717350 (issued April 7, 2015), or 4717232 (issued April 7, 2015).

---

[35] Dkt. No. 2-1 at 56.
[36] *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 (5th Cir. 1991).
[37] Dkt. No. 2.

2. Representing, by any means whatsoever, that any products manufactured, distributed, advertised, offered, or sold by Defendants are Plaintiffs' products or vice versa (including by mixing Gatorlyte products in ELECTROLIT branded display boxes, coolers, racks or other merchandising equipment or by mixing the products together on the same shelves, or by back-filling Gatorlyte products behind ELECTROLIT on shelves within the space reserved for Plaintiffs' products), and from otherwise acting in a way likely to cause confusion, mistake, or deception on the part of purchasers or consumers as to the origin or sponsorship of such products.

3. Using any logo, trade name, or trademark confusingly similar to any of the ELECTROLIT trademarks which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of any or all of the defendants or of others are sponsored by, authorized by or in any way associated with Plaintiffs.

4. Infringing any of the ELECTROLIT trademarks or ELECTROLIT trade dress.

5. Using any bottle, packaging, or advertising that is likely to dilute the distinctive quality of the ELECTROLIT trademarks or ELECTROLIT trade dress.

6. Engaging in anticompetitive conduct, including but not limited to, conditioning the sale of Gatorade products on the sale of Gatorlyte, or requiring that distributors or resellers remove Electrolit products from circulation as a condition of purchasing Gatorade or Gatorlyte.

7. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in this Temporary Restraining Order.

The Court **ORDERS** Defendants and their principals, agents, officers, directors, members, servants, employees, successors, assigns, and all other persons in concert and participation with them to recall from any and all channels of distribution, including but not limited to distribution and retailers, any and all infringing products and promotional materials for

Gatorlyte **immediately** upon receipt of this Temporary Restraining Order. Defendants shall thereafter file a notice with the Court, in writing and under oath, no later than **ten business days** after receipt of this Temporary Restraining Order setting forth in detail the manner and form in which Defendants have complied with the requirements of this Temporary Restraining Order.

The Court further **ORDERS** Plaintiffs to accomplish service of process by properly serving summons, Plaintiffs' complaint, and this Temporary Restraining Order upon Defendants within **three business days** of the date of this order. The Court **ORDERS** Plaintiffs to **immediately** post bond in the registry of this Court in the amount of $40,000 as security for the payment of such costs and damages as may be incurred or suffered by any party as a result of any undue harm caused by this Temporary Restraining Order. Plaintiffs shall thereafter, no later than **three business days** after accomplishing service and posting bond, file a notice with the Court, in writing and under oath, setting forth in detail the manner and form in which Plaintiffs have complied with the requirements of this Temporary Restraining Order. Failure to post bond or file the required notice shall result in dissolution of this Temporary Restraining Order.

This Temporary Restraining Order is issued at 5:00 p.m. on February 19, 2021, and expires on March 5, 2021, or upon further order of the Court.[38] The Court **ORDERS** the parties to appear for a hearing on Plaintiffs' motion for a preliminary injunction[39] on **February 26, 2021, at 9:00 a.m.**[40]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 19th day of February 2021.

_____
Micaela Alvarez
United States District Judge

---

[38] FED. R. CIV. P. 65(b)(2).
[39] Dkt. No. 2.
[40] *See* FED. R. CIV. P. 65(b)(3) ("If the [temporary restraining] order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.").